Good morning, Your Honor. Good morning. May it please the Court, my name is Colin Folon. I represent the appellant, the Scotts Company LLC. I'd like to reserve five minutes for rebuttal. We ask that this Court reverse and remand for further proceedings. Even if we were to agree with you that the court below did not apply the correct standard, you don't think we should do the realignment? Correct, Your Honor. The realignment was clear error. That is our position. Right, but the thing is, but you're saying it's to go back to the district court to do the realignment because we shouldn't do it here, even if we agree with you. Well, the realignment was made by the district court, and it is our position that that realignment was error. Right, I understand that, based on the state court proceedings. Correct. If we were to agree with you, if it's a matter of law, should we realign or should we send it back to let the district court realign? Well, we would be quite happy to have you realign. How could we do that? Well, because the appellate courts can do that. In fact, in some of the cases that we've cited. But do we have a developed record here to do that, since the district court did it on the state court? Absolutely, you have it on a developed record here because you have what is a record that the district court considered, which were the amended complaint filed by the Scotts Company LLC and the submissions of the parties on realignment. This was not a situation in which the district court entered findings of fact. It was the same type of analysis that this court would make on a record that exists. So this court is empowered to make that realignment if it so chooses, or it may also remand for the district court to do it correctly. We've argued that this is clear error, although because there were no findings of fact on this issue about realignment, it is also a de novo standard that would apply. Even presuming that if this court were to apply the clear error standard, each level of analysis on realignment was simply incorrect. The test, obviously, is to look at the primary matter in dispute and then the alignment of interests. The district court did not do that. The primary matter in dispute was the originating relationship, the contractual relationship between Scotts and Seeds. The supply agreement between Scotts and Seeds was exactly what was at issue. Rather than look at that as the primary matter in dispute, the district court was distracted by the theoretical bringing in of counterclaims and cross-claims by Seeds and growers, which were existing in the Whitman County case. It seems to me reasonable to conclude that the primary matter in dispute was, you know, whether the growers are entitled to more, and if so, who should pay. Isn't that what it comes down to? In other words, what Scotts is trying to do through their action is to wall themselves off from further liability to the growers. No, Your Honor, that's not correct. Well, that's the ultimate aim. Well, Your Honor, the amended complaint, which is of record in this case. Well, that's the question. Should we look only at the amended complaint, or can we look at the pleadings in the state court lawsuit? Well, the cases say you can look beyond the pleadings. But in this case, and actually I think the Zurn case from the 5th District is instructive because in Zurn, the court indicated that in a complex commercial case, you look to the matter pled. You look to the primary dispute in the pleading, and then if there are cross-claims and counter-claims, that becomes a matter of analysis for ancillary or pendent jurisdiction as to those. The District Court here got it backwards, arguing that the primary dispute was the growers' entitlement to money, where the amended complaint filed by Scotts was not purely defensive, did not seek purely declarative relief. Instead, it sought money damages and specific performance. If you look on the timeline of damages, a breach of contract claim for damages incurred looks to the past, how you've been damaged, specific performance, something that needs to happen now, and then declaratory relief. Well, if that's the case, why did Scotts add the growers to the amended complaint? Seeds actually moved to dismiss, arguing that they were somehow indispensable parties. In order to moot that issue, Scotts then amended its complaint to bring those growers in as parties. Isn't that admission that the presence of the growers is integral to the resolution of the primary dispute? Absolutely not, because, again, in the amended complaint, Scotts was seeking money damages from seeds, regardless of whether it had an obligation to pay growers. At paragraph 26 of the amended complaint, which is an excerpt to Record 491, it stated, alleged seeds breached the supply agreement when it sold to Scotts CKBG that was not derived from acres listed in grower contracts. Paragraph 27 refers to seeds misrepresentations. Does Scotts want to be in federal court? Scotts is an Ohio company. It's an out-of-state litigant. There's an amount in controversy. This is exactly why federal courts have diversity jurisdiction, so an out-of-state litigant can have the protections of federal court and proceed with its litigation. Scotts, there's been arguments from seeds and growers that somehow this was forum shopping, but Scotts didn't initially sue the growers. It sued seeds alone, a Washington company sued by an Ohio company in federal court, which Scotts was entitled to do. Growers have argued that there was some sort of... Are local juries not going to be good for you? Is that why you want to be in federal court? Well, Your Honor, that actually misses the point. Well, I know it misses the legal point, but I'm trying to figure out a lot of times plaintiffs because, what, the unanimous verdict is usually something that defendants like. You're a plaintiff, right? Yes, we are the plaintiff in the federal court case. That's correct, Your Honor. I just always like to know why. I mean, people don't pick their forums accidentally. No, we don't pick our forums accidentally. We pick our forums, and growers attempted to pick their forum after we chose our forum of federal court. And none of these cases turn on why you pick your forum. In fact, it's a presumption that the federal court will exercise its jurisdiction. It's only in exceptional circumstances that it won't. And, in fact, this court... I'm still not sure why it's to your advantage to be in federal court, but that's neither here nor there. But I'm sure that it is somehow. Well, we believe it is, and that's why we filed. We made a choice to file in federal court. So why do you believe it is? Well, Your Honor, this is a case involving multiple parties. This is Seeds, Inc. is a Washington company. Scotts is an Ohio company. Okay. So we asked for that. Getting back to the primary purpose analysis, which was wrong, the court also failed to analyze the alignment of the parties. So what's your best case that says that the district court was wrong? What are your best cases? Well, we've cited to the Zurn case. We've also indicated that there's no case that we've been able to find in which a district court has moved two parties in a three-party case, if we assume the growers are one party. And so the test was not followed. In the traditional cases where a party is moved from a defendant's chair to a plaintiff's chair. See, I think that Continental and Prudential are your best cases, but those aren't what you're citing. Continental is a good case because, in that case, you had Sergeant and McDonnell Douglas that were made co-parties because they had some identical interests. And we have nothing like that here. Growers were made a plaintiff, but they couldn't have been made a plaintiff based on any alignment of interest because they had no shared interest with Scots. Similarly, there was no shared interest between Scots and seeds against the growers. If Scots prevailed, growers did not benefit. If Scots prevailed, seeds did not benefit. So I agree that Continental supports us in this case. The same thing with all of these cases, including the Dolch case, which looks to, again, what are the alignment of interests. This is not a case where growers would benefit from anything that we did. We think that the Zurn analysis supports us here, and seeds actually cited the Plumtree case, which I'm not saying it supports either side, but it's telling that that's what they rely on for support because Plumtree was about a patent infringement dispute where the only claims made by the plaintiff that was turned into a defendant and the defendant was turned into a plaintiff, the only claims made by that switched plaintiff were defensive for non-infringement, and that's absolutely not what we have here. Can this panel decide on appeal whether exceptional circumstances exist under the Colorado River Doctrine? No, because there's no record of exceptional circumstances here. The district court did not put anything like that. In fact, the district court made the wrong analysis, plaguing its Colorado River Doctrine analysis with Brilhart, because it presumed that this was purely an action for declaratory relief, which on the face of the complaint, it's not. And therefore, this court can't find any exceptional circumstances because the district court didn't make any exceptional circumstances. In fact, the appellees essentially flee from that Colorado River abstention. None of them provide any exceptional circumstances with which the federal court could have or this court could have supported a Colorado River abstention. Do you want to reserve any time for rebuttal? Yes, I see you might have that, so I'll do that. Thank you, Your Honor. Good morning. Good morning, Your Honors. I'm Roger Sammerg. I'm representing Seeds Incorporated. I intend to use 10 of the 15 minutes, and Mr. Erblin, who's representing the growers, will address some of the questions. Okay, I'm going to stop you at 10 then. Okay, sounds good. The reason we're here today is because the district court dismissed this case based on lack of diversity. The district court realigned the parties engaged in a factual dispute trying to determine what is the primary dispute at issue here, recognized that the growers are the ultimate recipients of the funds here. The growers are suing Seeds Incorporated, located in Teco, Washington. The growers are located in Washington, some in Idaho. They're suing Seeds Incorporated on a breach of contract suit for several million dollars. This is not a diversity case. What authority allows the district court to consider claims in a state lawsuit in determining the primary purpose of a federal lawsuit for realignment purposes? What's your best authority on that? Several cases say that, including Prudential, including the city of Indianapolis versus Chase Bank, the Supreme Court case, basically every case that addresses realignment says that the court is to look beyond the pleadings and make a factual inquiry. And that's exactly what the court is supposed to do here. There were ñ and, again, I guess to address the standard of review here, this is a clear error standard of review. But it's to determine the primary purpose of the lawsuit. Yes, it can look beyond the pleadings, but how can just determining what the primary purpose of the state lawsuit is say what the primary purpose of the federal lawsuit is? Don't you have to do a little more? I'm not saying that maybe you can't look at it, but it looks like what the district court did said the primary purpose of the state lawsuit is this, therefore that's the primary purpose of the federal lawsuit, therefore I'm going to realign you, and therefore you're out. Well, it was a little more complicated than that. There were obviously motions to dismiss, affidavits submitted in support of those motions, documents submitted in support of those affidavits. And so the district court, again, made a factual inquiry. And the reason this is a clear error standard here is because the district court exercises discretion. This is not a summary judgment motion where we have to view all the facts in favor of Scotts. The district court weighs competing facts and makes a decision. There is no requirement that the district court grant all inferences in favor of Scotts, so that's why it's a discretionary decision on the part of the district court, and that's why it's a clear error standard. Well, it seems to me if it's a discretionary decision, the standard of review would be abuse of discretion. Perhaps I'm using the word discretion a little loosely there. I guess it's just accurate to say that the district court does not have to view all inferences in favor of Scotts. I agree it's not an abuse of discretion standard. It's a clear error standard. Well, that's with respect to factual determination, but the legal questions, of course, are reviewed in Oval. And getting back to the legal questions, I don't think you answered Judge Callahan's question. What case tells you in so many words that you can look at, you know, the pleadings in the related state court case to determine what the primary dispute is in the federal case? Well, I don't think that the district court was doing legal research on its own, going and pulling the state court pleadings out of that file. There were obviously affidavits submitted which incorporated what those state court pleadings, what was alleged in the state court pleadings. In terms of the legal standard, what the judge is allowed to review, the cases simply say that the court is allowed to look beyond the pleadings, allowed to take matters upon affidavits and so forth. So I'm not sure. I can't point to a specific case where the courts looked at solely state court pleadings, I suppose, but I don't know that in other cases they did not look at state court pleadings. They simply looked beyond federal pleadings. Well, I mean, there's no case that authorized it. In other words, if you read, you know, the order, Judge Zuko's order, it's very clear. He relied on what was going on in the state court, right? That was the primary reason he realigned the parties. I mean, he looked primarily, just read his ruling to what was going on in the state court case, not just the pleadings, but, you know, he says, well, they're further along and so forth. But I don't know of a case that says that's the basis for determining what the primary dispute is in federal court, to look at another case. Well, you know, I think it's more than just looking at pleadings. It's simply looking to the facts. That's what the court is doing. Well, but he's looking at the controversy, the dispute in the state court. That's what he's doing. He's looking at affidavits submitted by growers in the federal court pleading which say the same things. That say what's going on in state court. Which say we're owed millions of dollars. We will bring a breach of contract suit if this is going to go forward. Which is not the primary dispute in the federal court. It is the primary dispute in the federal court. The growers are owed money, at least that's what they claim. This is an ancillary dispute. I know, but nobody's growers, you know, at the point where this determination is made, had the growers sued Scotts for money? They had sued in the state court pleading. In the state court pleading. Yes, I am, but in the federal case. They had not. They appeared without filing a, well, they simply filed a motion to dismiss at that point. All right. So the district court is. Looking at the original suit that Scotts brought against Seed was just to require an audit. From that standpoint, how did we get to this state trial? The way we get there is, again, a motion to dismiss based on lack of diversity. First of all, based on realignment of the parties. Well, wait a minute. The original suit didn't require any realignment of anybody. The original suit just was that Seed should provide an audit. And from that standpoint, there was no, the growers weren't involved at all. They were not, but they were joined before the motion for realignment was raised, and so at that point the growers were a party to the lawsuit. All right. Now, how did they get joined? Scotts voluntarily joined them after Seed had brought a motion to dismiss for failure to join an indispensable party. I wouldn't call that voluntary, but go ahead. Correct. Yeah. They did not contest the motion. Got into your head. Correct. A couple other points that are extremely important to raise here. Regarding, well, I guess I said I was going to address some of the abstention issues. Regarding the abstention issues. I think, Mr. Fullon, read your papers correctly that you certainly, at least you don't emphasize the Colorado River aspect, do you? Let me put it that way. We don't emphasize Colorado River because Colorado River really has to do with when a court is not entertaining a declaratory judgment act. The court in this case said, this is a declaratory judgment act. That's really Brillhart. Therefore, we don't have to find exceptional circumstances. Well, it seems that you would almost, you'd have to concede that the district court erred in failing to make a finding that this case poses exceptional circumstances under Colorado River, and that that alone would justify reversal. I would disagree on two reasons. One, that this Colorado abstention was an alternative grounds, obviously, and we're not saying that's the only reason that the court should be affirmed. But second, I think the court was correct in saying that there does not have to be exceptional circumstances when it's a declaratory judgment act. Again, Colorado River abstention is about the situation where you have a nondeclaratory judgment act. Somebody's seeking damages, and the court has to find a reason to still abstain or defer to the state court pleadings. This is, so since it is a declaratory judgment act, that's what the court found. Only in part. Well, I think the court made specific findings to the contrary. They said that although Scott has claimed breach of contract related to the audit. And asked for damages. Those damages depend on what the audit finds. The audit is saying, we need to find out how much seed was stuffed. We need to find out how much, so that all things depend on the audit. So it is a declaratory judgment act. Okay, yeah. I'm going to give your co-counsel five minutes since you were answering Judge Tashima's question. So I'll give you back the 15 seconds it took to answer. Good morning, may it please the court. My name is Peter Erblin, and I represent the growers in this case. Judge Hug asked a question about how this came about, and I just want to take a minute to talk about that, if I may. Every year, these farmers, they harvest their seed, and by fall, it's in these grain elevators. They're all in at that point. They have no money coming in. They've spent money, and they've spent the season raising grass seed. The processors take the seed. They cut the wheat from the chaff, to use a poor analogy. They pass it on to the ultimate buyer, which is Scott's. In the fall of 2010, after the farmers were all in, and the harvest was all in, there was a deafening silence. Nobody was going to pay. Scott's wasn't going to pay. There was a dispute brewing like a tinderbox between Scott's and the processors. What's your theory? I haven't read your complaint. That you're like the third-party beneficiary, the contract between Scott's and seeds? Yes, Judge. If you look at the supply agreement, in fact, it does talk about looking after the interests of the growers. So your theory is either or both of those people are responsible? All three of them, jointly as government. For the extra 12 cents or whatever it is. Actually, they didn't pay anything in the fall of 2010. The farmers had no checks coming in. And so this was going to explode at some point. Scott's, for their own purposes, went to federal court and sued, seeking an audit of the processors. They didn't sue the grass farmers. Nobody has claimed the grass farmers did anything wrong. The farmers finally got tired. Well, I don't know about that, because there is some allegation about, well, you know, the farmers shifted non-contract acreage into this contract, right? And Scott's has since abandoned that argument. They have? They have. So the growers finally frustrated, sued in state court, and sued all of them. I wish I had another table. They're both defendants, and they should be. We don't care who pays us. We have contracts with the processors, and we have contracts as third-party beneficiaries with Scott's. Why isn't the state court suit enough? Why do we have to be involved in the federal court at all? That's our question also, but we were pulled in there against our will, and here we are. So you just want to get paid. We just want to get paid. Well, then let me put it this way. Do you agree or disagree that the district court erred in realigning the parties, or does it not make any difference to you? I believe that the court correctly realigned the parties, because we see ourselves as plaintiffs suing both of these parties. We see ourselves as the plaintiffs. We are the plaintiffs. That's our burden. Do you see the lawsuit that you're just not getting paid and all this other stuff are reasons that people don't want to pay you? That's what's going on. It's a squabble between the two of them of who should pay us. Well, when you say we're the plaintiffs, that's exactly what you are in state court. And that's what Judge Succo decided that we should be in federal court. We should be the plaintiffs. Well, you know, one way to look at it, and maybe somebody who's cynical would do this, is to say that, well, Judge Succo saw this state court case going on. He says, well, here's an easy way to get rid of this case. They should fight it out in state court anyway. One might draw the conclusion, but hopefully that wasn't the process that he went through. I can say that part of the record does show, and to answer the question about, well, are there any cases, prudential, continental, are there any cases that allow us to look at state court pleadings to decide whether or not that's a factual basis to realign. And, no, candidly, I have not found a case either. But I would point this out. What better evidence than the actual positions of the parties asserted in pleadings by their lawyers and affidavits as to what is going on in the state court? What better evidence could you find? Well, but I guess I'm going to look at it the other way in the sense that Judge Succo looks at it. He has all of you there, and as judges sometimes we just go, you know, this is just really about no one wants to pay these farmers, and they're bringing all these other things between them. And so I'm going to, you know, I'm going to practically take the bull by the horns and just see that those farmers, you know, that they can just get their matter litigated. But there's that, you know, pesky little thing called the law that says that people can bring other lawsuits. They can't ask for audits. They can't ask for all of those things. And that's what they're saying this federal lawsuit's about. And so, you know, why isn't this just the judge looking through to the bottom line saying, you know, come on, get this done, but those cases don't get in the way. I agree with you, and I can only tell you from our standpoint, Judge Callahan, that we see ourselves as the plaintiffs because we have contracts with these people, and they haven't paid it. I don't want to go outside the record now and tell you what's happened in the state court action. Right. No, but I think you've added a little clarity to certain issues here. Thank you very much. Thank you. Briefly, as a matter of rebuttal, I think it was telling what Mr. Erblin said in terms of him giving the perspective. He indicated that there is a dispute like a tinderbox between whom? Scots and the processor. That was the dispute. That was the primary dispute in the federal case. Even if growers had brought claims in federal court, cross-claims, counter-claims, even if seeds had done that, the Zurn case is instructive. It tells us in complex litigation with various claims flying back and forth, there are two distinct steps. One, examine the primary purpose for filing suit. It is undisputed that the primary purpose for filing this federal lawsuit was Scott's breach of damages claim, specific performance claim, and also declaratory relief. Counsel for seeds has argued that this is a declaratory judgment case and somehow Brilhart applies. But the standard is do we have stand-alone breach of contract claims? Seeds argues that we don't, but all one has to do is look at the amended complaint. That's at excerpts of record 45 through 494. If you take out a pen and you were to strike out on excerpts of record 489, paragraph 14, on excerpts of record 491, paragraph 24, on excerpts of record 492, paragraphs 30A and 30B, and at 493, paragraph 34, then in the prayer for relief, strike out paragraphs 1, 3, and 4. What we are left with is clearly, patently a stand-alone breach of contract claim. Brilhart did not apply. And as the court correctly was asking, the Colorado River Doctrine is completely inaccurate because it was essentially just restating the Brilhart analysis. That's wrong. The primary dispute here is between Scott's and Seeds. That was the primary originating relationship. That relationship went awry. Seeds breached. But the fact that there are downstream effects for other contracts to which Scott's was not a signatory does not make those contracts the primary dispute. All right. I think we understand all of your arguments. Thank you, Your Honor. Thank you both. Thank you, all of you, for your arguments. It's a difficult case, and this matter will stand submitted. The court is in recess for the week. All rise. I don't know what the growers were doing in there at all. Right. Yeah. Weird.
judges: Hug, Tashima, Callahan